**Michael Lynn MILLS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–85–122–CR.**

Court of Appeals of Texas,
Texarkana.

Aug. 26, 1986.

C. Stephen Hughes, Sulphur Springs, for appellant.

Frank Long, Dist. Atty., Sulphur Springs, for appellee.

GRANT, Justice.

Michael Lynn Mills appeals his conviction for the offense of attempted capital murder, for which he was sentenced to forty years confinement in the Texas Department of Corrections.

Mills raises nine grounds of error on appeal. The first four grounds concern the sufficiency of the evidence. Two grounds relate to the admission of evidence concerning an alleged kidnapping. The last three grounds relate to the jury charge.

The evidence indicates that a meeting was held at the home of James Foote on January 9, 1985. Mills was present at the meeting as were Lisa Bouvier, James Foote, Daniel Necker and George Thomas Mars. The discussion at the meeting centered on the commission of a crime in order to obtain a large sum of money. Foote suggested kidnapping Amy McNeil, a girl

he knew who lived in Alvarado. On January 10, 1985, Bouvier, Foote and Necker traveled to Alvarado to look at the McNeil home. They returned to meet with the others on the same day.

On the morning of January 11, 1985, Mark McNeil and his sister Amy were on their way to school when their vehicle was forced off the road by three masked men. One of the men placed a shotgun to Mark's head while the other two forceably removed Amy from the vehicle and placed her on the rear floorboard of their car. Mark was given instructions by one of the men, and he returned home and informed his mother of what had happened. She in turn informed his father, who notified the police.

The four men took Amy McNeil to the Foote home and Lisa Bouvier was charged with caring for her. Amy's father was called. They instructed him to obtain $100,000 in cash. The following day, the men, all armed with shotguns and pistols, and Lisa Bouvier left the house in a stolen car. They carried Amy McNeil, the kidnapped victim, with them.

After driving a circuitous route, the group proceeded to the place designated for McNeil to bring the money. Mills was driving the vehicle, and en route the group concluded that they were being followed by the police. Shots were then fired from the vehicle. Bouvier testified they were going to take a hostage at a filling station or house. The car was going too fast to stop at the filling station and stopped in a yard near a house in Saltillo. Lisa and Amy got on the floorboard. Mills, Barnes and Foote got out of the car.

Shots were exchanged, and when the shooting stopped, Mills and Foote were lying on the ground in front of a van which was parked in the yard. Mills raised his hands and surrendered to Texas Rangers Bill Gunn, Howard Alford and John Dendy, who had been among the pursuing officers.

The portion of the indictment pertinent to the issues raised on appeal charged that:

Michael Lynn Mills ... did ... intentionally, with the specific intent to commit the offense of capital murder of John Dendy, ... intentionally shoot a gun at and in the direction of John Dendy who was then and there a peace officer acting in the lawful discharge of an official duty and who the said defendant knew was a peace officer, which said act amounted to more than mere preparation that tended but failed to effect the commission of the offense intended, ....

Mills contends that the evidence is insufficient to show that he or anyone in his group intentionally shot at John Dendy.

In reviewing the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the verdict, any rational finder of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Gardner v. State*, 699 S.W.2d 831 (Tex.Crim. App.1985); *Brandley v. State*, 691 S.W.2d 699 (Tex.Crim.App.1985); *Carlsen v. State*, 654 S.W.2d 444 (Tex.Crim.App.1983).

The evidence shows that Mills was present during the planning of the kidnapping, that he was with the group that left to commit the crime, that it was Mills and Barnes who brought the kidnapped victim into the house, that Mills was armed during the episode, and that Mills was driving the vehicle when the group went to pick up the ransom money and during the chase by the law enforcement officers. The evidence further shows that Mills made all the plans as to where the money exchange would take place. The evidence further reveals that at the time of the capture, Foote was in possession of a sawed-off shotgun and a .38 Smith and Wesson pistol was thrown across the hood of the car near where Mills was found. The pistol had two spent cartridges, indicating that it had been fired, and four unfired rounds.

The evidence thus clearly shows that Mills was involved with the other men in the commission of a crime. We find that there was sufficient circumstantial evidence to indicate that he fired shots at the

law enforcement officers, but even if this evidence were insufficient, as a party to the act he would be responsible for shots fired by other parties. Tex.Penal Code Ann. § 7.01 (Vernon 1974). The common purpose of the kidnappers was to collect the ransom and to escape apprehension.

Mills contends that there is no evidence to show that any of the kidnappers directed their fire at John Dendy as set forth in the indictment. Dendy testified as follows:

Q And you returned fire on the people that were firing at you?

A Yes, sir.

. . . .

Q Ranger, when you were at the location in Saltillo and once you exited your vehicle and fire was started, gunfire started, was there any question in your mind that they were firing at you?

A No.

Q Or in your direction?

A No.

Q Was there more than one shot fired?

A Yes, sir.

Q Was there any question in your mind that they were trying to kill you?

A Not at that time, no.

On cross-examination, Dendy testified as follows:

Q But you are not here today to swear exactly what it [referring to the gun that was firing] was pointed at?

A No, sir.

Q Isn't it a fact that there was multiple targets out there? If somebody was shooting at something that there were many things they could have been shooting at?

A I don't understand your question.

Q At least six officers and three cars in pursuit?

A Yes, sir.

■ While the evidence does not directly show that Dendy was being fired at as an isolated target, we find that it is sufficient to show that he was part of a group which was being fired upon. There was certainly sufficient evidence to show that the kidnappers were intentionally firing at the law enforcement officers. At that time, the kidnappers still held their captive and were attempting to escape their pursuers.

■ Mills also contends that there was no showing that he was aware that John Dendy was a law enforcement officer. The testimony indicated that the kidnappers were chased for more than twenty miles at speeds in excess of one hundred miles per hour. The kidnappers were aware and had discussed early in the pursuit the fact that they were being followed by police. Two of the police cars in pursuit used their sirens, and one of the cars had a flashing light. While it is true that Dendy's vehicle did not possess emergency equipment in the form of a siren or flashing red light, he was in a convoy between law enforcement vehicles which were so equipped and which had the equipment operating. We find that there is sufficient evidence from which the jury could infer that Mills was aware that Dendy was a law enforcement officer.

■ Mills also argues that the admission of the extraneous offense and details concerning the alleged kidnapping was error. The test for admissibility of evidence of extraneous transactions constituting offenses by the accused requires a showing that the transactions are relevant to a material issue in the case and that the relevancy value of the evidence outweighs its inflammatory or prejudicial potential. *Williams v. State*, 662 S.W.2d 344 (Tex.Crim. App.1983). This was a direct evidence case, and the extraneous evidence unquestionably assisted the jury in resolving the issues before it. Moreover, in this instance the evidence of extraneous conduct was essential to the jury's understanding of the facts giving rise to the offense of attempted capital murder for which Mills was being tried.

With respect to the balance between probative value and prejudicial effect of the extraneous conduct evidence, we find that the probative value of the evidence of cir-

cumstances leading up to and surrounding the incident in question was such that the jury was properly permitted to consider it. Therefore, the extraneous criminal conduct was admissible to show the context in which the criminal act occurred, to show scienter, to show Mills' state of mind, and to show Mills' motive. *Williams v. State, supra.*

■ Mills' next ground contends error by the trial court in failing to charge the jury adequately on the law requiring an intent to kill Dendy. The charge to the jury contained the following:

Our law provides that a person commits murder if he *intentionally* or knowingly causes the death of an individual.

A person commits capital murder if he murders a peace officer who is acting in the lawful discharge of an official duty and who the person knows is a peace officer.

A person commits an offense if, with specific *intent* to commit an offense, he does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense intended. This is an attempt to commit an offense. A Texas Ranger is a peace officer.

A person *intentionally* or with *intent*, with respect to the nature of his conduct or to circumstances surrounding his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

. . . .

Mere presence alone will not make a person a party to an offense. A person is criminally responsible for an offense committed by the conduct of another if, acting with *intent* to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

. . . .

Now, if you find from the evidence beyond a reasonable doubt that on or about the 13th day of January, 1985, in Hopkins County, Texas, the defendant, Michael Lynn Mills, did then and there *intentionally*, with the specific *intent* to commit the offense of capital murder of John Dendy, do an act, to-wit: intentionally shoot a gun at or in the direction of John Dendy, who was then and there a peace officer acting in the lawful discharge of an official duty and who the said defendant knew was a peace officer, which said act amounted to more than mere preparation that tended but failed to effect the commission of the offense intended, then you will find the defendant guilty of attempted capital murder, as charged in the indictment. (Emphasis added.)

We find that the court properly charged the jury as to the element of intent. *Martinez v. State,* 656 S.W.2d 103 (Tex.App.—San Antonio 1983, pet. ref'd).

Mills further urges that the trial court erred in failing to require a unanimous verdict on the issue of his guilt. He bases this ground of error on the failure of the trial court to require the jury to enter a separate verdict if they found Mills guilty as a party, but found that he did not personally fire the shots at the law enforcement officer. He argues that six of the jurors may have believed that he was the individual doing the shooting, while the other six jurors might believe that he was guilty only as a party.

■ Mills contends that he is harmed because of the possibility that this will affect his parole. Tex.Code Crim.Proc. Ann. art. 42.18, § 8(b) (Vernon Supp.1986) provides that a prisoner is not eligible for consideration of good time if he is convicted of any of the crimes listed in Tex.Code Crim.Proc.Ann. art. 42.12, § 3g(a)(1) (Vernon Supp.1986). The crime of attempted capital murder is not included in this list. This section also provides that a prisoner is not eligible for good time if the judgment contains an affirmative finding under Tex. Code Crim.Proc.Ann. art. 42.12, § 3g(a)(2) (Vernon Supp.1986). This section provides for an affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense or during

the immediate flight therefrom. Mills is correct that the case of *Travelstead v. State,* 693 S.W.2d 400 (Tex.Crim.App.1985), requires that such an affirmative finding in the judgment be based upon a finding by the trier of facts, being the jury in the present case. No issue was submitted to the jury concerning the use or exhibition of a deadly weapon. The judge did not make an affirmative finding in the judgment that Mills used or exhibited a deadly weapon. Thus, we find that Mills was not harmed by the failure to submit this issue to the jury.

We further find that the trial court properly instructed the jury that the verdict should be unanimous, and pursuant to Tex.Penal Code Ann. § 7.01 (Vernon 1974), a person is criminally responsible as a party to an offense if the offense is committed by his own conduct or by the conduct of another for which he is criminally responsible. It is no less an offense under the law if a person is guilty as a party of another person's conduct. There is no requirement for a separate finding under the law of parties, and a jury's verdict is considered unanimous if all the jurors find the defendant guilty of the offense with which he is charged.

The judgment of the trial court is affirmed.